You're now going to move to case 24-1347, Rao v. J.P. Morgan Chase Bank and Kraus. We'll begin with the argument from the opponent, Mr. Stegman. Mr. Stegman. Mr. Stegman. Thank you. Good morning, Your Honor. Michael Stegman for Dr. Rao. Good morning, counsel. We are here today on the appeal of two counts that were dismissed. A defamation count where the defendant, Chase Bank, accused Dr. Rao of using her power of attorney to establish a POD designation, a payable on death designation, on her mother's accounts without her mother's knowledge, just using her own POA, and defrauding her mother. You're not allowed to use your power of attorney to take over your mother's accounts upon her  We're also here on the appeal of a consumer fraud act claim where there's a statute saying a entity, a data collector, can't release personal identity information unless it's authorized by the owner of that information. In this case, that was Dr. Rao. The Illinois statute on payable on death designation specifically states that upon the mother's death, that POD account belonged solely to Dr. Rao, and if we are going to have protections for such data, which the consumer fraud act wants, you can't disclose such personal information without either legal process, a subpoena, or getting the permission of Dr. Rao. And neither one of those was done here, and that's why Chase violated the statute. Getting started on the defamation claim, the trial court had three reasons it found to grant the dismissal and summary judgment. The first one was whether the statement had been made at all. We supplied the defendant Krause's own affidavit in paragraphs 11 and 15 of Krause's own affidavit. He specifically states, he confirmed to the third party, to the estate administrator, that Dr. Rao used signature cards to establish the POD in her favor by the use of the power of attorney. So we have his own affidavit stating what we claim is defamatory language. Speaking of affidavits, in your reply brief, you referred to two Krause affidavits. Yes. One from 2023. What are you referring to there? We tried to follow it. Are you referring to Krause's interrogatories? No, Your Honor. So what the defendants did here is in their summary judgment motion, they attached a new Krause affidavit dated 2023, which tried to explain away what Krause's statements in the first 2020 affidavit. And the trial court allowed Krause, allowed the defamation defendant, to explain away what he understood his statements in 2020 to mean. And that is not allowed under Illinois law. Under giant screen and to it, it's the reasonable recipient, the reasonable reader, determines what a statement means on its face. And what Krause himself understood three years later has no bearing on whether the statement was defamatory. He is not entitled to any additional weight instead of plaintiff or Mr. Singler or the estate. It's the reasonable reader. It's an objective standard. So it was completely improper for the court to put extra weight on a defamation defendant's subsequent affidavit trying to explain away statements he made earlier. It's not evidence at all. So back to your outline. When you are referring to his affidavit, you're referring to the original. Yes, I am referring to the original affidavit. Paragraphs 11 and 15 of his original affidavit are the statements we have said are defamatory. And just because inquiry minds want to know, why not take the deposition? We could, Your Honor, and we have gone ahead and just used the affidavit here because, you know, we have the statements in the affidavit signed by the defendant himself. We also have the filing by the estate using, you know, the affidavit to explain away why he made the filing in the first place, accusing Dr. Rao of fraud in open court and elder abuse. But assuming that the affidavit establishes all of that, how does it establish recklessness? Well, we have our own grounds for recklessness, Your Honor. We have submitted Dr. Rao's affidavit, and she talked to several Chase employees, and it's undisputed here that these Chase employees said, first of all, Chase's own records would have shown that the POD designation was made in 2012 and not 2013. It's also undisputed that Chase's own procedures and policies would have prohibited Dr. Rao from using her power of attorney to make a self-serving request on her behalf. Those are both undisputed. It's also undisputed that Dr. Rao couldn't—the signature card is not how a POD designation is made. But without a deposition, how are we getting into Krauss's state of mind and saying he's reckless? Even if we agree he didn't follow internal policies, how would you go from there to recklessness? Certainly, Your Honor. Under giant scrutiny, the defendants have to do a reasonable investigation of the circumstances before—to avoid abuse of the qualified privilege. And in this matter, you know, specifically, you know, the defendant got an opinion only from its medical department, but it should have also consulted its legal department before saying this chiropractor had performed improperly under Illinois law and we can't pay the insurance claim. So, and giant screen, also, the defendant itself, the entity, it was a forged document and the defendant should have—one, document A was forged, document B among the same documents. There was certainly a question, you know, if somebody forges document A, they might have also forged document B. You have to do a reasonable investigation. And the case sided by the trial court as well. Judge Lee originally saying, you know, we've got to—the Boyd case. If there are records that the defendant has and could be investigated, it hasn't conducted a proper investigation. Overall, especially I think Kulik is the best example of this, if an institution has knowledge, easily obtained knowledge, that if it investigates its own records, if it contacts the right people, it will come up with the truth and not falsely accuse a third party of fraud, falsely accuse Dr. Rao of defrauding her mother, the institution has to conduct that reasonable investigation. It's a question of fact. If one part of Chase knew that Dr. Rao could never have done this legally, one part had records that showed she couldn't do it, and perhaps the most direct answer is that Donna Glavin, the Chase employee that we cite in our affidavit who Dr. Rao talked to, she appears on the signature card that the defendant Krauss relied on to conclude that Dr. Rao committed fraud. All he had to do was call Donna Glavin because that was her job to make the payable on death designations. And that's like the Kulik case. If the medical department is unsure of the legal ramifications of an Illinois statute on whether a chiropractor is properly practicing under Illinois law, the medical department has to contact the legal department. It can't come out with a potentially defamatory statement without consulting everybody else in the institution, particularly the people who are assigned to know it. And if defendant Krauss had never done POD designations, didn't know where the electronics record were, didn't know how POD designations are even made, didn't know it was against Chase policy, that of course someone with the power of attorney can't make a self-serving POD designation in her favor, he was obligated to contact somebody else at Chase who did know all these things, especially Donna Glavin who was Dr. Rao's banker and who appeared on the Chase signature cards making that payable on death designation. Your Honors, I'd like to quickly cover the qualified privilege claim we have here too. As I said before, I'm sorry, the consumer fraud claim. We have also alleged consumer fraud at claim here. This account belonged to Dr. Rao upon the death. And before you can release personal information under the Illinois statute, you need authorization. And just because it once belonged to the decedent, you still need subpoena power. It's as if a dispute between a home buyer and a home seller, the home seller just shows up at the house that's no longer his with his inspector and busts in and goes to the basement to inspect it because there's a dispute there because the asset once belonged to him. That's not how Illinois law works. Once the asset is with Dr. Rao and has never been with the estate, the bank had an obligation to either respond pursuant to a legitimate subpoena or protect Dr. Rao's personal identity information. That's why we have this statute. That's why we have broad protections under the Consumer Fraud Act. This account never belonged to the estate. The estate can ask the bank. The bank could have said, yeah, records show that this POD designation was properly made, but it couldn't just willy-nilly release her personal identity information without a subpoena for accounts that never belonged to the estate. Would you like to reserve the remainder of your time? Yes, I will. Thank you very much. Thank you very much, Mr. Stigman. Mr. Shurker, we'll move to you. May it please the Court, Elliot Shurker on behalf of JPMorgan Chase. What this record shows is a long and contentious probate battle in state court in which Dr. Rao was removed as the administrator of her mother's estate, replaced by Midland Trust. Dr. Rao's action against Chase, which is based solely on Chase's compliance with Midland's request for information on her mother's accounts pursuant to the directives of the state probate court, is we submit the collateral damage from that battle. And the district court correctly ruled that Chase should not be dragged into that probate dispute. We have three independent bases for summary judgment on the defamation per se claim. First, that there is no evidence that the purported defamatory statement was ever made by the Chase banker Kiefer Kraus to Midland Trust lawyer Mark Singler. Secondly, any statement by Kraus to Singler that led Midland to act as it did in the probate court was, at best for Dr. Rao, an innocent construction of bank records by Mr. Kraus. Why would they have alleged fraud if it was innocent? I'm sorry, they're not alleging consumer fraud, but they're not alleging common law fraud against the bank. No, but why would they have alleged that there was the problem that Mr. Stigman has indicated if it was an innocent construction? I don't know. The bank records say what the bank records say. There's no mystery document here. There's no independent knowledge on behalf of Mr. Kraus. He looked at the same documents, for that matter, that Ms. Galvin looked at that are listed in Dr. Rao's affidavit. What happened was Mr. Singler came to Mr. Kraus and said, we need to find out what the status of these accounts is. Who was the POD beneficiary? And the record shows that Singler did that because the probate court had asked Dr. Rao for those records and she hadn't produced them. There were a couple of screenshots that were redacted. So the state administrator, who is a customer of Chase, came to Mr. Kraus to find out. Mr. Kraus looked at the 2013 signature cards for the account and told, and gave those cards to Mr. Singler and understood from those cards that Dr. Rao was the POD beneficiary. Now the word established got bandied about a lot in the district court. It's not apparently a big issue here today. But Mr. Kraus testified, and by the way, there's no second affidavit. There were interrogatory responses, sworn interrogatory responses in the district court. There's the affidavit that was filed in the state court, and there are sworn interrogatory responses. And that's the extent of Mr. Kraus' statements. The affidavit states, I looked at the 2013 cards, that's paragraph 9 and paragraph 15 of the affidavit, that was submitted in state court by Midland. At the end of this entire process, I note, because that affidavit also includes Mr. Kraus' discovery after his third conversation with Mr. Singler that, in fact, the POD beneficiary designation had been made in 2012. So the whole story was presented to the state probate court. Leaving that aside for a moment, Mr. Kraus, in paragraphs 9 and 15 of that affidavit, states that I told him that the 2013 card established the POD beneficiary. In the complaint, that's called the POD statement. That is the sole basis for the defamation per se claim. What Mr. Kraus said in his sworn interrogatory responses was, I used the word established to mean it shows that it happened. He didn't use the word proven. Why then would he continue on to say, why would he add that the designations were established with the use of the power of attorney and by Dr. Rao as the agent of the power of attorney? In other words, what you're saying would make sense if he stopped right where you say he stopped, but he didn't stop there. Yes, Your Honor. If you look at the card, it has both POD beneficiary and power of attorney. And what Kraus said, very much the same as Ms. Galvin said, was that I told Singler it was very unlikely that a POA was ever used to establish a POD. That was his sworn testimony. What the paragraph 9 says, somewhat unartfully I will concede, but paragraph 9 says is that there was a POD beneficiary. It's with the power of attorney. They're on the same signature card. The signature card. With the use. With the use. That's correct. With the use. Not with, as in they're on the paper together innocently and unconnected, but with the use. And what he testified was what I meant by that and what I told Singler was not that Dr. Rao had done that. He could not conclude from the card that Dr. Rao had done that. That's his sworn interrogatory response. And in paragraph 15 he says pretty much the same thing. So what happened was then, as the uncontradicted evidence shows, Singler went ahead and filed something in probate court. And that's the basis for Dr. Rao's complaint about the use of that first statement. Singler then went, what happened immediately thereafter was Dr. Rao's counsel sent an email to Singler saying, Chase never told you that. Chase never said it happened on the same date. You're wrong. And Singler then went back to Mr. Krause and said, look at 2012. That's what I'm, look at 2009 when the account was established. Krause looked at 2009 cards and there was no POD beneficiary. That's when the account was created. There was no POD beneficiary at that time on those cards. So he told Singler that. And then Singler came back a third time and said, wait a minute, look at the 2012 cards. And sure enough, the 2012 cards show the power of attorney was conferred by Dr. Rao's mother in 2012. And all the documents in the record bear that out. So we don't have any paper indication whatsoever. And remember, Singler had the papers in his hand that shows the POA was used to create the POD. And Singler says, I didn't say that and I didn't mean that. And it would be highly unlikely. That's the unrefuted record before the court on the defamation per se. The second reason that the district court granted summary judgment was that even if that's not so, Your Honor, even if Krause was wrong, it was at worst an innocent construction of the documents, which were, as I said, handed to Singler. There was no showing whatsoever and no evidence whatsoever. And as the courts noted, there's no deposition of Krause. There's only his sworn interrogatory responses that we submitted on summary judgment. There's no indication whatsoever that he made the statements that he made with any untoward intent, much less reckless intent. He was the private banker for Midland. Midland came and asked him a question. He looked at the documents. Can we look back in hindsight and say he should have dug through the records more? He should have done this. Opposing counsel suggested all sorts of things that Krause could have done. None of that shows recklessness. At worst, it shows negligence and does not defeat innocent construction. And the final reason, which we didn't hear a lot about this morning, the final reason the court granted summary judgment was the qualified privilege. The plaintiff conceded the qualified privilege applied to Chase's communications with its own customer, Midland. The qualified privilege under Illinois law requires willful intent or reckless disregard for there to be liability when there's qualified privilege, for much the same reason that I've talked about innocent construction. There's no showing whatsoever that Krause acted with reckless disregard. As the district court ruled, at worst, this was a mistake in construction, and the attorney for Midland took it and ran with it by running to the state probate court on that first statement and making an accusation against Dr. Rao. We never made any untoward accusation against Dr. Rao. That was done by Midland. Of course, Midland was protected by the litigation privilege, and Dr. Rao then turned and sued us for Mr. Krause's statement, which even if mistaken, there's no evidence in this record whatsoever that it was made with reckless disregard, and the sworn interrogatory responses by Mr. Krause are that there was no such intent. He looked at the document. That's what he thought. He says in paragraph 15 of the original affidavit, he says, I believed that there was a POD, and I believed that there was a POA. That's the antithesis of evil intent. Turning briefly to the claim under the state law, the only issue for the court on that claim, which is about a page and a quarter of the opening brief, the only issue is whether in answering questions from its own customer, which was the estate administrator of Dr. Rao's mother's estate, and was acting under the directives of the state probate court, Chase could have in any way violated its responsibility as a data collector. No, there's no case cited in the briefing from the other side. There's no case we could find in Illinois law that would authorize such a bizarre result. When a bank communicates with its own customer, which was standing in Dr. Rao's mother's shoes as the administrator of the estate, and provides unquestionable documentary information, it cannot possibly be acting in violation of a statute that prohibits data collectors from willy-nilly exposing their customers' data. Thank you. Thank you, counsel. Mr. Stigman, we'll move back to you for rebuttal argument. Just to begin, Mr. Stigman, how large of an estate are we talking about? It was in the millions, Your Honor. Thank you, Your Honor. I want to follow up again with your points on the affidavit. And counsel accidentally said the truth here, that what Krauss said was that Dr. Rao conferred the POD designation. It wasn't just proven. He didn't tell Midland, he didn't tell the estate that it was proven. Instead, he said it was established, it was set up by Dr. Rao, which was fraudulent. And I'd encourage the court to also look at Paragraph 12 of the affidavit, which says, quote, Dr. Rao wrote back that she claimed the account was not established in 2013, but was established in 2009. And this is in Krauss's own affidavit, Paragraph 12. So taking the context of that affidavit as is required, as this court did in Giant Screen, in that own affidavit, it's using established to mean set up, not to mean proven. Because if Dr. Rao, you know, she's saying it's not about it was proven in 2013, she's saying it was established in 2009, it was not established in 2013. If all we were concerned about is whether there was any designation at all prior to death, if this was just a titling matter, that sentence doesn't make any sense. All we would want to know is, yeah, in 2013 there was a POD titling before death, end of story. There wouldn't even be any reason to look back at 2009 unless the critical issue was when and how the POD designation was established. And Your Honor is exactly right. The affidavit says again and again that it was established, it was set up by Dr. Rao in 2013 using her power of attorney, and that was fraudulent conduct, which the estate subsequently accused Dr. Rao of in court using what it learned from Krauss, what it learned from Chase, and that's why it attached that Chase affidavit to its subsequent explanation. Wow, we don't want to get sanctioned. This is Chase's fault for giving us the false information, and that's why they got the affidavit from Krauss. The court had the correct understanding of the innocent construction rule, and counsel actually made the mistake of reading it properly. Chase accused Dr. Rao of conferring it, establishing it, setting it up, and that was improper. Lastly, Your Honor, I want to briefly address that the district court didn't even consider the affidavit evidence we applied of the improper investigation because it made an improper hearsay ruling. It barred our affidavit statements of the owned Chase employees. It's undisputed, or counsel has not disputed, that we're allowed to use that evidence against Chase. We've cited the courts. Under that affidavit evidence, Chase failed to look at its own records. Chase should have known that this was improper under its own procedures. Chase should have called Glavin, who knew the POD designation procedure and how this all worked. It conducted an improper investigation, and under giant screen and CUIC, summary judgment should have been denied here. Thank you, counsel. Thank you, counsel. The case will be taken under advisement.